## Thomas P. Sheldon v. William H. Warner and another.

*Chattel mortgage: Pine logs: Mortgagor: Possession: Subsequent purchaser.* When the mortgagee of pine logs, which are in the possession of a boom company, neither files his mortgage as required by statute, nor takes any steps to assert or make known his interest in the logs, third parties contracting with the mortgagor, without notice thereof, in consideration of his turning the logs over to them, to extend the time of payment of a debt due them from him, to return the logs to him at the end of such extension, on payment of their claim and interest, and in default of such payment to manufacture enough of the logs into lumber to satisfy the same at fixed rates, to pay certain expenses and reimburse themselves out of the lumber, and finally to return the surplus, if any, to the mortgagor, do not make themselves liable to pay the mortgage by manufacturing the whole of said logs, if insufficient to satisfy their claim in accordance with such agreement.

*Pine logs: Possession: Boom company: Delivery.* The possession of logs by a boom company for booming purposes only, is that of the owner, and is not in contravention of any right of property, control, or possession in him, but subordinate and subservient to his authority and purpose; such custody, therefore, is no obstacle to such a change of possession or delivery to a purchaser or mortgagee as the nature of the property and its situation permits.

*Chattel mortgage: Mortgagee: Subsequent purchasers: Consideration.* Where the mortgagee has thus allowed the mortgagor to appear to all the world as owner, and suffered the property to remain precisely as though he had no incumbrance upon it, and third parties have in good faith entered into and carried out such a contract with the mortgagor, it cannot be said that the whole consideration thereof was the pre-existing debt alone, and that, therefore, their rights are subservient to the mortgage; whether considered as a sale or security, the consideration was sufficient to impart to the transaction the good faith made essential by the statute, to give it precedence of the mortgage.

*Heard January 11. Decided January 14.*

Error to Saginaw Circuit.

*W. S. Tennant,* for plaintiff in error.

*C. H. Gage,* for defendants in error.

GRAVES, J.

The plaintiff in error brought general assumpsit against the defendants in error, and upon the trial the verdict was

rendered against him, upon which judgment was entered, and he now seeks a reversal of that judgment, on the ground of misdirection by the court.

It appears by the bill of exceptions, that upon the 19th of August, 1869, one Oliver P. Burt, a resident of Buffalo, in the State of New York, was the owner of a large quantity of logs, which were then in the possession of the Tittabawassee Boom Company, and in the river intermixed with a large quantity of other logs bearing different marks and belonging to several different parties; that Burt on that day loaned five thousand dollars of the plaintiff, and gave him a chattel mortgage on the logs, to secure the loan, of which two thousand dollars was to be paid September 18th, 1869, one thousand five hundred dollars, October 19th, 1869, and one thousand five hundred dollars, October 25th, 1869. It likewise appears that the payments preceding the last were made as they fell due, and that the last was extended, by a new note, payable in ninety days from October 25th.

At the time this mortgage was given, the plaintiff and Burt seem to have supposed that a filing with effect was practicable, notwithstanding Burt's non-residence, and the latter was apprehensive that if the mortgage was made public by filing it, his credit would be thereby impaired. He accordingly requested the plaintiff to refrain from filing the instrument, and stated that as the reason. The plaintiff thereupon placed the mortgage in his safe, where it was kept until February, 1870, and he seems not to have made its existence known to any one before that time.

No possession was taken by the plaintiff, but on the contrary, Burt was suffered to exercise dominion over the property, as though it was unincumbered and remained his own. He was, therefore, allowed by the plaintiff to appear to the world as owner of the logs, and to gain the credit and confidence which that character would give, and such

appearance was directly and naturally adapted to draw third parties into engagements with him, on the faith of his having the right he seemed to have.

On the 30th of November, 1869, and about three months and a half after the mortgage to the plaintiff was given, the defendants, without any notice of that mortgage, entered into a written agreement with Burt, concerning a portion of the logs covered by the plaintiff's mortgage; and the principal facts leading to this agreement, as stated in the record, were as follows: During the season of 1869, and commencing at a time prior to the date of the plaintiff's mortgage, the defendants sawed a large quantity of logs for Burt, and a part of which belonged to the very lot embraced by that mortgage. A portion of the lumber so made was shipped by Burt. But on the 18th of November, 1869, there remained upon the dock, of the lumber so manufactured, about two hundred thousand feet, upon which the defendants claimed a lien for sawing, amounting to four dollars per thousand.

The defendants urged Burt for payment, and informed him that they would not permit the lumber to be shipped unless they received some money. Their entire demand against him at that time was four thousand nine hundred and forty-one dollars and thirty-three cents. A verbal arrangement was then made, in substance the same as the subsequent written agreement, and thereupon the defendants relinquished their alleged lien, and consented to the shipping of the lumber, and the same was shipped by Burt on the twentieth.

The reduction of the contract to writing was delayed until the 30th of November, on account of the state of defendant Eastman's health, he being sick at his house. At the time last mentioned the contract was put into writing, when, or rather upon the next day, the defendants,

pursuant to Burt's instructions, called at the office of the boom company and left the contract there, with instructions to the company, who then had the custody, to hold the logs marked as mentioned, for defendants, and make delivery to no others. The company thereupon retained a copy of the agreement, and held the logs for defendants, and ran them and delivered them to defendants in the spring of 1870. The lumber cut from the logs was insufficient to pay the defendants their demand as specified in the contract.

By the terms of this agreement, as reduced to writing, Burt, in consideration of his indebtedness of four thousand nine hundred and forty-one dollars and thirty-three cents, to the defendants, sold to them all the pine saw-logs then in the possession of the Tittabawassee Booming Company, bearing certain marks, and including such as then remained covered by the mortgage to the plaintiff, and agreed that he had a good unincumbered title. He also agreed to pay the boomage, due or to become due on the logs, and the expense of running from the boom to the defendants' mill, at East Saginaw. It was then further provided, that the defendants would sell the logs to Burt, between the date of the agreement and the 15th of March, 1870, upon payment to them of the sale price and interest at ten per cent. per annum; and further, that if the logs should not thus be resold, that then the defendants should saw the logs into lumber in the spring and summer of 1870, within a reasonable time after they should be run to their mill boom, and take from the lumber so made upon the terms particularly specified in the agreement, a sufficient quantity to pay the sum of four thousand nine hundred and forty-one dollars and thirty-three cents and interest at ten per cent. per annum to the date of selection, and also the cost of such sawing, at four dollars per thousand, and whatever the defendants should

be found to have paid for boomage and running to their.
mill boom. It was also provided, that if this alternative
was adopted, the defendants, after sawing sufficient lumber
to pay themselves pursuant to the agreement, should recon-
vey upon his request, the remainder of the logs to Burt.
The defendants, under and in pursuance of this arrange-
ment, disposed of the property and realized some four thou-
sand six hundred and twenty-nine dollars and ninety-four
cents therefrom, being less than the amount they were enti-
tled to by the agreement. According to the evidence, there
was at the same time, about nine hundred dollars unpaid
upon the plaintiff's mortgage.

The foregoing are the main facts in the case, and they.
give rise to this general question, whether the mortgage title
of the plaintiff was such as to entitle him to recover against
these defendants, the amount remaining unpaid upon the
mortgage, and this is supposed to depend upon whether the
defendants ought to be considered as creditors of the mort-
gagor, or subsequent purchasers and mortgagees in good
faith within the meaning of the statute.—*Rev. Stat. of 1846,
ch. 81.*

. The plaintiff in error, it is true, contended that, when
he got his mortgage, the property was actually out of the
possession of Burt, and in that of the boom company, and
that therefore no change of possession or delivery was needed
to enable him to hold against third parties. But whatever
view of this point may be admissible, where a party other
than the mortgagor, has a hostile, or complete and absolute
possession, a possession which excludes the exercise by the
mortgagor of control, and disables him from doing any
thing tantamount to an actual delivery, it appears to me
that in a case circumstanced as this is, there is no room
for raising the question. The possession which the boom
company appears to have had up to the time of the agree-

ment with the defendants, was measurably that of Burt. The nature of the property made it necessary to handle and move it through the action of this company. But whatever they did was not done strictly in the exercise of any dominion over the property. Their doings were not in contravention of any right of property, control or possession of Burt, but were subordinate, and intended to be subservient to his authority and purpose. They did not hold adversely to him or independent of him. In a limited sense, they were his agents, and so far as the nature of the property and its position permitted a change of possession, the custody of the boom company was no obstacle to a change from Burt to the plaintiff. It is true, that the nature of the property precluded that complete subjection by change of possession which is practicable in most cases. But the plaintiff here received delivery in no form, and made no attempt to obtain any possession, or any actual control. That something of a public nature in the way of delivery and change of possession, was entirely practicable, is shown by the course pursued by the defendants, and I think in view of the circumstances, that the plaintiff was not excused from taking such possession as the case permitted.

Upon the main point the plaintiff contends, that the defendants were neither subsequent purchasers or mortgagees in good faith, because as he claims, the whole consideration was a pre-existing debt. I am unable to concur in this theory of the case, and, therefore, think it not needful to consider whether, upon a just construction of the statute, a mere antecedent indebtedness would be sufficient. The plaintiff here allowed his mortgagor, Burt, to appear to all the world as owner, and suffered the property to remain precisely as though he had no incumbrance upon it.

Under these circumstances, the defendants having a debt against Burt and claiming a lien upon the property, and

the latter desiring to get the supposed lien released so that he could ship the lumber, and the defendants desiring to get their debt secured, they were thereby induced to enter into the agreement in question.    Such were the motives of the parties.    But the contract itself involved considerations beyond, and greatly beyond, the precedent indebtedness. New relations were introduced, and new and extraordinary obligations were incurred.    As a part of the arrangement by which the defendants were to obtain payment of their debt, and as consideration for the disposition of the property by Burt to them, they extended the time of payment of a demand already due, bound themselves to return the logs three and a half months thereafter on payment of their demand, and further undertook in the event that payment should not be made at that time, to manufacture enough of the logs into lumber in the season of 1870, to satisfy it at certain fixed rates, and to take their pay out of such lumber.    They also undertook to pay certain expenses and reimburse themselves therefor out of the lumber, and finally to return to Burt whatever logs should remain.    There is no standard for estimating the value of these stipulations when they were made.    But there is no difficulty in seeing that they were of great value, and just as little in seeing that the right bargained to the defendants, though induced by the desire of the latter to get payment of the existing debt, and by the desire of Burt to remove the alleged lien upon the lumber, was not upon the consideration merely of the prior debt.    It is hardly necessary to attempt a definition of this agreement with the defendants; because the same rule will apply, whether we consider it a sale or security.    And in either view the consideration, I think, was such as to stamp the transaction with the good faith made essential by the statute.

26 MICH.—52.

As no error is shown, the judgment should be affirmed, with costs.

The other Justices concurred.