No. 18,434.

A. L. MOFFAT, as Trustee, etc., *Appellee,* v. C. W. BEELER, as Trustee, etc., *Appellant.*

SYLLABUS BY THE COURT.

1. CHATTEL MORTGAGE—*Not Filed—No Open Change of Possession—Void.* Under the statute requiring a chattel mortgage or a copy of it to be filed with the register of deeds, unless it is followed by an actual change of possession in order to excuse the omission to file, the change of possession must be of such character as to be open to observation.

2. SAME—*Constructive Change of Possession—Not Sufficient.* The fact that the mortgaged chattels are already in the hands of the holder of a prior mortgage, who agrees to hold possession also for the benefit of the second mortgagee, does not dispense with the necessity of a record, as against creditors.

14—91 KAN.

Appeal from Edwards district court; ALBERT S. FOULKS, judge.  Opinion filed January 10, 1914.  Affirmed.

*Edgar C. Ellis, Hale H. Cook,* and *Raymond G. Barnett,* all of Kansas City, Mo., for the appellant.

*W. S. McClintock, A. L. Quant,* both of Topeka, *Charles A. Baker,* of Dodge City, and *Charles E. Lobdell,* of Great Bend, for the appellee.

The opinion of the court was delivered by

MASON, J.:  E. O. Beckwith, a merchant, executed a chattel mortgage upon his stock of goods to a bank, which took possession of the property, placing its agent, J. E. Stowell, in charge.  Ten days later he executed another instrument, which for present purposes may be spoken of as a chattel mortgage, to C. W. Beeler (who was president of the bank), as trustee for a number of Beckwith's creditors.  Beckwith was adjudged a bankrupt, in proceedings begun more than four months later.  The trustee in bankruptcy brought replevin for the goods, and recovered a judgment, from which Beeler appeals.

A reversal is asked upon the ground that under the facts as found by the trial court the judgment should have been for the defendant.  The findings that are here important are to the effect that the instrument executed to Beeler was a chattel mortgage; that it was never filed for record; that Beeler at once "assumed control of the stock of goods in question under said writing, but that said J. E. Stowell continued in the actual visible possession and charge thereof"; "that there was no apparent change of possession when said C. W. Beeler assumed control of said stock of merchandise."  The court concluded that the chattel mortgage to Beeler was void as to the plaintiff, because it was neither made of record nor accompanied by an actual and apparent change of possession.

The defendant .contends that as Beckwith had de-
livered the stock to the bank, and was no longer him-
self in possession, the unrecorded chattel mortgage was
valid without any change of possession except such as
is shown by the findings. The court found that there
was no visible change of possession whatever. When
the mortgage was given the person having physical
possession of the goods was Stowell. After it was
given the condition, so far as could be ascertained by
observation, remained the same. Stowell was still in
possession. The only difference was that whereas he
had formerly held only for the protection of the bank
under its mortgage, he now undertook to hold also for
the protection of the creditors secured by the second
mortgage, under the direction of Beeler, the trustee,
who was also president of the bank to which the first
mortgage had been given. Stated in general terms the
question is, Where the mortgagor of chattels delivers
them to an agent of the mortgagee, is an unrecorded
second mortgage to another person valid against
creditors, if the agent agrees to hold for the benefit of
the new mortgagee?

The defendant relies strongly upon *Nash v. Ely,*
(N. Y. Sup. Ct.) 19 Wend. 523, which was decided in
1838. There a mortgage was given upon goods which
were in the hands of a third person, claiming to have
acquired title thereto by transfer from the mortgagor
in payment of a debt. The mortgage was held to be
good against an attaching creditor, who assailed it on
the ground that it had not been accompanied by a
change of possession. The court said:

"The statute does not require that the mortgagee
shall take the actual possession of the property at the
time himself; it is enough if he removes it out of that
of the mortgagor; and if he finds it in the custody of
a third person, when the sale or mortgage is made, we
do not perceive any thing in the language, or in the
object, or policy of the act, against permitting it to re-
main with him till such time as he may choose to take

the personal charge of it. Leaving the property in this condition, is certainly not within the mischief of leaving it in the possession of the vendor or mortgagor." (p. 524.)

When that case was decided New York had a statute (passed in 1833) substantially like our own with respect to the filing of chattel mortgages. So the case upon the facts would seem to be directly in point. An examination of the opinion, however, discloses that no reference whatever was made either to the omission to file the mortgage for record or to the effect of the recording act. The statute to which the court there referred (obviously the only one considered, as it was the only one discussed) was one making all transfers of personal property *prima facie* fraudulent as to creditors unless accompanied by "an actual and continued change of possession," being somewhat the same as the third section of our statute of frauds (Gen. Stat. 1909, § 3835). However, it related to sales made by a vendor of goods "in his possession or under his control." (3 Rev. Stat. of N. Y. 1859, part II, title 2, § 5.) So the decision in the Nash-Ely case was obviously sound so far as it related to the effect of that statute. Of that decision it was said in *Beskin v. Feigenspan*, 52 N. Y. Supp. 750:

"The defendant contends that as the property was in possession, not of the owner of the mortgaged property, but of a third party, the tenant, a change of possession was not necessary; and he relies on *Nash v. Ely*, 19 Wend. 523, in support of this claim. It must be borne in mind that there are two statutory enactments relating to the validity of chattel mortgages— that of the act of 1833, already cited, and section 5, 2 Rev. St. p. 136 (now reproduced in the lien law and personal property law), which declares that sales and mortgages of goods and chattels, unless followed by an actual and continued change of possession, shall be presumed fraudulent and void as against creditors or subsequent purchasers in good faith. Even where a chattel mortgage is properly filed, the failure to change

Moffat v. Beeler.

possession raises a presumption of fraud. *Smith v. Acker*, 23 Wend. 653. It was in reference to this provision of the Revised Statutes that the court held in *Nash v. Ely*, supra, that where the property is in the possession of third parties the case does not fall within the statute. There is a difference between the language of the two statutory provisions. The section of the Revised Statutes makes provision for the case of a vendor of goods or chattels 'in his possession or control,' and merely creates a presumption of fraud in case of a failure to change possession, while the statute of 1833 provides that chattel mortgages shall be absolutely void unless filed as therein directed, and does not limit its application to the cases of a vendor 'of goods or chattels in his possession or under his control.' We are of opinion that *Nash v. Ely*, supra, is not in point on the question of change of possession under the act of 1833. If, however, we are in error as to this view, then it must be considered as overruled by the later cases in Hill, Hun, and in the New York Reports, already cited." (p. 751.)

The cases referred to in the portion of the opinion just quoted are not absolutely in point upon the facts of the present case, but they sustain the view that the change of possession referred to in the recording act as a sufficient substitute for a record must be an actual and not a constructive change; must be such a change as to be apparent to an observer. The considerations already stated make it clear that the decision in *Nash v. Ely* is not an authority, except by analogy, upon the construction of the act relating to the filing of chattel mortgages. It has, however, been so cited by text-writers and by courts, for instance in *Buhl Iron Works v. Teuton*, 67 Mich. 623, 630, 35 N. W. 804, and *First Nat. Bank v. Barse Commission Co.*, 198 Ill. 232, 254, 64 N. E. 1097. Other cases apply the same rule, but under statutes which do not require an actual change of possession in order to dispense with the record. (*Morse v. Powers*, 17 N. H. 286; *Wheeler v. Nichols*, 32 Maine, 233; *Clark v. Williams*, 190 Mass. 219, 222,

76 N. E. 723.) If the doctrine of the Nash-Ely case were accepted a chattel mortgage would be valid without record and without change of possession, if when it was made the property was not in the control of the mortgagor. We must regard the question before us as an open one, to be determined from the language of our statutes.

It is to be noted that our statute of frauds, which is somewhat similar to that interpreted in the Nash-Ely case, expressly provides that it is not to interfere with the law relating to chattel mortgages. Statutes relating to the effect of a transfer of title to personal property unaccompanied by an actual change of possession may well receive a liberal interpretation in view of conditions that make such a change difficult. But the act requiring the record of a chattel mortgage is explicit, and compliance with it is easy. It requires a record unless there is an actual change of possession. (Gen. Stat. 1909, § 5224.) The mortgagee may always protect himself by making a record, which is the normal condition; the unrecorded chattel mortgage is the exception.

In the present case it may be that substantial justice would have been subserved by upholding the second chattel mortgage. But the general rule that would be established by such a decision here would hamper the operation of the recording act, and might open the door to frequent injustice. For illustration, a merchant might make a small chattel mortgage on his stock and give the mortgagee possession until payment should be made. A third person, advised by the record that the stock was worth much more than the lien, might give credit to the mortgagor, only to find out later that in the meantime a second mortgage for the full value of the stock had been given, which was not of record, but was valid because the first mortgagee had agreed to hold possession for the protection of the second

mortgagee as well as for his own. The whole question is one of legislative policy, and our statutes seem to have been drawn with a purpose to make the requirement of record especially rigid in the case of chattel mortgages. The failure to record a real-estate mortgage can be taken advantage of only by one who has been thereby misled—a purchaser in good faith, for value and without notice. But an unrecorded chattel mortgage, although given in the best of faith, may be defeated by a creditor, even although he had actual knowledge of it.

Upon the grounds stated and suggested we approve the ruling of the trial court to the effect that in order to be effective against creditors a chattel mortgage must either be made of record, or be accompanied by such a change of possession as would be apparent to an observer.

The question whether the instrument spoken of as a chattel mortgage was not in fact merely a void assignment for the benefit of creditors has been argued. It seems probable that the circumstances made this question one of fact, to be determined by the trial court upon all the evidence. But in view of the ruling already made this need not be determined.

The judgment is affirmed.