JOHN CAULFIELD v. MICHAEL CURRY, ALVIN HOLMES,
AND NORTON B. HOLMES.

*Fraudulent conveyances—Equity—Injunction—Copartnership
mortgage securing individual debt.*

1. Where a *second* mortgagee of personal property, the first mortgage
being duly filed, filed a bill to set it aside as fraudulent,—

*Held*, that, in order to warrant interference by injunction to
restrain the mortgagee from exercising his rights under his
mortgage, complainant must show that he has been *defrauded*
by taking his security, relying upon the *fact* that no *prior* lien
existed, and, further, that he did not receive his mortgage as a
*second* lien, with *actual* knowledge and recognition of the *first*
mortgage.

2. It is questionable whether an injunction should ever issue to inter-
fere with the rights of one in *possession* of property, upon a
showing made only upon information and belief. The courts do
not favor such a proceeding, and only in *extreme* cases, where
the *facts* relied upon are *entirely* within the *knowledge* of the
defendant, is it justified.[1]

3. Where the answer in an injunction suit *squarely* meets all the
allegations in the bill, and the defendant is *pecuniarily* responsi-
ble, there is no occasion for interference with his action until his
*fraud* is established.

4. Where solvent copartners gave a mortgage on their stock to secure
a copartnership debt, and also a private debt of *one* of the co-
partners,—

*Held*, that this would not be *necessarily* fraudulent in law nor
in fact, and, if the circumstances of the mortgagors were such
as to have this effect as to the *individual* debt, the mortgagee
had the right to enforce the security as to the firm debt.[2]

Appeal from superior court of Grand Rapids.   (Parrish, J.)
Argued November 3, 1886.   Decided November 11, 1886.

Bill filed to set aside a mortgage.   Defendant Norton B.

---

[1] See *T., A. A. & N. M. Ry. Co. v. D., L. & N. R. R. Co.*, 61 Mich. 9.
[2] See *Walker v. White*, 60 Mich. 428.

Holmes appeals.    Reversed, and case remanded for further
proceedings.    The facts are stated in the opinion.

*William A. Smith* and *Arthur C. Denison*, for com-
plainant.

*Thomas J. Kelly*, for appellant.

MORSE, J.    The defendants Curry and Alvin Holmes,
being copartners in the grocery business at Grand Rapids, on
the first day of December, 1885, made and filed a chattel
mortgage upon their whole stock of goods then on hand, and
such additions as might thereafter be added thereto, all fix-
tures of every kind, all articles in and about their store,
and a horse, wagon, and harness.    This mortgage was for
$750, a portion of the same being admitted to be given for
the individual debt of Alvin Holmes, who is the son of Nor-
ton B. Holmes, the mortgagee named in said instrument,
and to whom it was delivered.

December 10, 1885, they executed a second mortgage, run-
ning to the complainant, as trustee for himself and Clark,
Jewell & Co., for an indebtedness of $400.    This last mort-
gage was filed of the date of its execution, and became due
May 1, 1886.    It represented the property to be free from
all liens and incumbrances, and covered substantially the
same property as the first mortgage, with the addition of the
books of account and other evidences of indebtedness then
due and owing, or to thereafter become due, of said firm of
Curry & Holmes.

Both mortgages contained a clause authorizing the mort-
gagee to take possession when he should deem himself
insecure.

Under this clause, defendant Norton B. Holmes took
possession of the property named in his mortgage, December
19, 1885, and still holds the same.

May 1, 1886, the date when his mortgage became payable,
the complainant filed his bill of complaint in the superior

court for the city of Grand Rapids, in chancery, to set aside the first mortgage as fraudulent against him; praying for the appointment of a receiver, and that a temporary injunction might issue against any disposition of the property.

He alleged as ground for such relief, upon information and belief, that at the date of the first mortgage Curry & Holmes were insolvent, and that the indebtedness for which it was given as security was not the indebtedness of said firm, but the private debt of Alvin Holmes; $500 of it being incurred for the payment of a half interest in the business, which he purchased of Curry, and the remainder an original debt from Alvin Holmes to his father.

He also averred the good faith of his own mortgage; that the property was of such a nature that it was rapidly depreciating in value, and the total value was much less than the two mortgages, and that it was not worth much more, if any, than enough to satisfy his mortgage; that Curry & Holmes were then totally irresponsible, and that he has no means of realizing his indebtedness unless it is realized by virtue of his mortgage; and that he has been unable to find any property of Norton B. Holmes subject to execution, and, upon information and belief, charges his financial irresponsibility. A temporary injunction was granted.

On the eighteenth of May, 1886, the complainant made petition for the appointment of a receiver.

On the twenty-fourth of the same month defendant Norton B. Holmes filed his answer. The other defendants have not answered.

His solicitor the same day entered a motion to dissolve the injunction, which motion was based upon the bill and answer, and an affidavit of Alvin Holmes.

This motion was heard at the same time with the hearing of the petition to appoint a receiver, and decided at the same time.

The answer denies any knowledge on the part of Norton

B. Holmes, when he received his mortgage, of the existence of any indebtedness of Curry & Holmes to complainant, or Clark, Jewell & Co.; denies that he had any knowledge, intimation, or belief, at that date, of the insolvency of Curry & Holmes, but, on information and belief, avers they were solvent; denies that the mortgage to himself was for the individual debt of Alvin Holmes, except as to a small part thereof.

He avers in that regard that the debt secured by his mortgage was a *bona fide* one, $500 of it being the copartnership debt of Curry & Holmes to him, for which he held at the time their obligations, and the balance of $250 was in part the interest unpaid upon the $500 debt, and the remainder the individual debt of his son Alvin to him.

He avers that complainant had full knowledge of his mortgage, as he believes, aside from the filing of the same, which was constructive notice, and that he (defendant Norton B. Holmes) does not know whether Curry & Holmes are now financially irresponsible or not; and shows that he has property, unincumbered, of the value of $5,000; denies all fraud, and avers the perfect good faith of his security, both on his part and that of Curry & Holmes.

The affidavit of the defendant Alvin Holmes shows that, at the date of the mortgage to Norton B. Holmes, both Curry and himself considered and believed themselves responsible and solvent, and had no idea or intent to defraud any one in executing the same, which was given in good faith, to secure an existing copartnership indebtedness, except the $250, a portion of which was his individual debt to his father; and that he believes the complainant had actual knowledge of his father's mortgage when he took his security on the tenth of December.

Upon this showing in bill and answer and affidavit the injunction should have been dissolved, and the petition for a receiver denied.

It is doubtful if the complainant would be entitled to relief upon the bill of complaint alone. The allegations relied upon are all upon information and belief. He fails to show whether he knew of the prior incumbrance or not when he took his mortgage, and makes no explanation as to the books of account and other evidences of indebtedness which his mortgage covered. How much these bills receivable of Curry & Holmes amounted to, or what has been done with them, does not appear. There is nothing to show affirmatively that he did not take his mortgage as a second lien upon the goods, relying upon their value and the books of account, notes, etc., to aid him in making his debt. It is true that his mortgage, as shown by his bill, contains a representation that the goods are clear of all liens and incumbrances; but the mortgage to Norton B. Holmes was on file in the proper office when his mortgage was executed, and the presumption is that he had notice of it. While he states in his bill that the debt to himself and Clark, Jewell & Co. was incurred while there was no suspicion or knowledge that any other person than Curry & Holmes had any legal or equitable interest in the mortgaged property, he nowhere avers that he did not have full knowledge of the mortgage the foreclosure of which he is seeking to restrain.

He must fail to make out a case for the interference of equity by an injunction to interfere with or restrain Norton B. Holmes from exercising his rights under his mortgage, unless he shows that he has been defrauded by the taking of his security, relying upon the fact that no prior lien existed upon the goods, and a further showing of the fraudulent character of such mortgage, and that he did not receive his mortgage as a second incumbrance, with actual knowledge and recognition of the first. This he has not done by his bill. It is questionable whether any injunction should ever issue to interfere with the rights of one in property in his possession, upon a showing made only upon infor-

mation and belief. The courts certainly do not look with favor upon such a proceeding, and only in extreme cases, where the facts relied upon are entirely within the knowledge and possession of the defendant, is it justified.

The answer in this case squarely meets all the allegations of the bill, and denies them. The defendant Norton B. Holmes is responsible, and there is, therefore, no occasion for the interference of the court with his action until his fraud is established.

The fact that a portion of the indebtedness is for the individual debt of the son cannot help the complainant to maintain his injunction, or aid the appointment of a receiver. If Curry & Holmes were solvent at the time the mortgage was given to Norton B. Holmes, the securing of this amount by the copartnership would not be necessarily fraudulent in law, nor fraudulent in fact. If the circumstances of Curry & Holmes were such as to make the security as to this portion of the indebtedness fraudulent in law as against the complainant, the defendant Norton B. Holmes has yet the right to collect his security for the copartnership debt.

The order or decree of the court below in the premises is set aside and vacated, and the possession of the property must be restored to Norton B. Holmes, with costs to him of both courts. The record will be remanded for further proceedings in the court below, if any shall be desired.

The other Justices concurred.