JOSEPH DALTON v. JOHN STILES AND DOUFF POYER.

*Fraudulent conveyances—Good-faith mortgagee—Evidence.*

1. There has never been any such doctrine recognized in this State as would avoid a mortgage given for a past debt against a creditor whose own lien was subsequently acquired. The general subject is fully discussed in *Root v. Potter*, 59 Mich. 498, where mortgages made in good faith on the eve of an assignment were held not to be in law fraudulent preferences over which the assignment would prevail. The same question of priority of mortgages given for existing debts over subsequent assertions of claims, was disposed of in *Root v. Harl*, 62 Mich. 420; *Krolik v. Root*, 63 Id. 562; *Caulfield v. Curry*, Id. 594. See, also, *Walker v. White*, 60 Id. 427; *Whitfield v. Stiles*, 57 Id. 410.

2. There is no objection to a competent witness stating the value of a stock of goods and store fixtures if to be sold out at once.

for cash, or their value to a person going into the business for which they were purchased, and it is for the court to tell the jury how to deal with the different theories.

Error to Menominee. (Grant, J.) Argued April 18, 1889. Decided April 24, 1889.

Trover. Defendants bring error. Affirmed. The facts are stated in the opinion.

*W. H. Phillips* (*G. W. Hazleton*, of counsel), for appellants.

*Sawyer & Waite*, for plaintiff.

CAMPBELL, J. Plaintiff sued defendants in trover for seizing and converting his property. He held a chattel mortgage duly filed and recorded on a stock of goods and fixtures, which defendants seized on attachment against his mother, who was the mortgagor. They took the property, not subject to the mortgage, but in defiance of it. He recovered below, and defendants allege only two errors,—one was concerning an item of evidence; the other was because the court did not order a verdict for defendants.

A witness, Frank A. Mitchell, who showed a knowledge of the business, testified that he was one of the appraisers, and appraised the property at $1,736, on the basis of what it would bring at a forced sale. He also testified that many of the goods were new, and some unopened, and none very old. In answer to a further question, touching the fair market value of goods and fixtures, he answered, in substance, that to take the goods and fixtures at cost they would reach a much higher sum; that the fixtures were invoiced at about a third of their cost; that, if to be sold out at once, the invoice made was about right, but for a person going into the business they would be worth some $2,200 or $2,300. A motion was made to

strike out the whole of this answer. We can see no legal objection to it. The witness was a man of experience, and values are largely matters of opinion. If, as witness said, the value for different purposes would vary, it would be for the court to tell the jury how to deal with the different theories. But the testimony was proper.

There is no exception to any ruling by the court beyond this, except for refusing to direct a verdict for defendants. The facts were substantially these: Mrs. Dalton, plaintiff's mother, owed him over $2,000 for money of his in her hands. She had also considerable means of her own. She had lent $2,000 to a firm of Dalton & Young, one of the latter being plaintiff's brother, and held a mortgage on their stock of goods. In March, 1887, she bought out Dalton & Young, and assumed their debts. During that spring and early summer she was applied to by plaintiff to secure his debt, and promised to do so. She was in debt in March for nearly $400 to the attachment creditors, and in this period increased the liability to about $1,000. On July 2 she gave a chattel mortgage to plaintiff, who recorded it July 5. On July 15 the attachment was sued out. Plaintiff's mortgage is attacked as fraudulent. So far as any questions of fact are concerned, there is no complaint that they were not properly submitted to the jury. But defendants claim the mortgage was void in law, as against the plaintiffs in attachment. We cannot understand the basis of this claim. At the date of the mortgage, which contains, so far as the record shows, no unusual provisions, both parties were on the same footing as unsecured creditors for past debts. Each was at liberty to secure himself as he could. The plaintiff got the first claim by obtaining a chattel mortgage. Had the attachment creditors obtained a mortgage first, he would have

the same reason, and no more, to complain of them that they have to complain of him. Mrs. Dalton had a right to secure either or to refuse security. She had promised her son to secure him, but such a promise amounted to nothing till carried out, and the security only dated from its execution. Any agreements or dealings complained of outside of the papers might present questions for the jury, and the record shows that they were fairly presented. But the court could not take them from the jury. Upon the naked question of the validity of the mortgage by itself, the question is simply whether a creditor who gets security for a debt due him can be postponed to another creditor, whose debt is also due, but whose claim on the goods is dependent on a subsequent attachment levy. The question is too plain for discussion, and can only become confused by bringing in extrinsic questions which, if pertinent at all, involved matters of fact as well as law, and could not be taken from the jury. No rulings on those questions are before us.

We do not quite see how the question of *bona fides* in obtaining security for a previous debt can arise, where the party contesting it had no superior equities at the time, and gave no new credits afterwards. But in this State there has never been any such doctrine recognized as would avoid a mortgage given for a past debt against a creditor whose own lien was subsequently acquired. The general subject is fully discussed in *Root v. Potter*, 59 Mich. 498 (26 N. W. Rep. 682), where mortgages made in good faith on the eve of an assignment were held not to be in law fraudulent preferences over which the assignment would prevail. The same question of priority of mortgages given for existing debts over subsequent assertions of claims was disposed of in *Root v. Harl*, 62 Mich. 420 (29 N. W. Rep. 29); and *Krolik v. Root*, 63 Id. 562 (30 N. W. Rep. 339); and *Caulfield v. Curry*, Id.

594 (30 N. W. Rep. 191). See, also, *Walker v. White*, 60 Id. 427 (27 N. W. Rep. 554); *Whitfield v. Stiles*, 57 Id. 410 (24 N. W. Rep. 119).

Many other cases may be found in our reports. We should not have felt justified in referring to this subject at all, but for an evident misunderstanding, which we cannot account for, of our rule on this subject. It is impossible for us to conceive how the attachment creditors, who when this mortgage was given were simple creditors at large, could have any greater rights than plaintiff, who was on the same footing until he got his mortgage, and thereby gained priority. To treat such a mortgage as a legal nullity as against a lien subsequently acquired would be a startling doctrine.

The judgment must be affirmed, with costs.

The other Justices concurred.