CHARLES ROOT & CO. AND J. K. BURNHAM & CO. v. JOHN
HARL, GEORGE W. STEVENS, ET AL.

*Assignment for benefit of creditors—Honest mortgage not affected because
made on preceding day—Exemptions—Debtors have right to use as
they see fit so far as creditors are concerned—Unrecorded mortgage
—Creditors have right to avoid who have, during its absence from
record, given new credits—Or definite extensions of time on old debts.
—Or renewed notes or other obligations—On basis of non-existence of
such mortgage—For proper distribution of assigned property, as between
general creditors and prior mortgagees, see page 423 of opinion.*

1. An *honest* mortgage is not affected by its proximity to a general assign-
   ment. *Root v. Potter,* 59 Mich. 506–7.

   So *held*, where a debtor executed an indemnity mortgage the day
   before he made a general assignment for the benefit of his creditors.

2. Insolvent debtors have a right, as against their creditors, to use their
   statutory exemptions as they see fit.

   So *held*, where an insolvent firm, after a general assignment, ap-
   plied their exemptions on a *prior* chattel mortgage given to a creditor.

3. An insolvent firm made a *general* assignment for the benefit of their
   creditors, August 7, 1883. On April 13, 1883, they had executed a
   chattel mortgage to secure a creditor, who did not record same
   until July 16, 1883, and on August 6, 1883, they had executed an
   *indemnity* mortgage to another creditor. Neither mortgage was
   *actually* fraudulent, but during the interim between the execution
   and filing of the *first* mortgage other creditors had given credits by
   sales, liens, and extensions to the mortgagors, in *good faith.*

   *Held*, that the *second* mortgage had preference over the *general*
   creditors, but was subject to the *first* one, and that the *general* credit-
   ors, except those who had given credits as aforesaid, took subject to
   *both* mortgages.

4. Under our statutes any creditors have the right to avoid an *unrecorded*
   mortgage who have, during its absence from the record, done any-
   thing *material* which they may be fairly considered to have done on
   the basis of its non-existence. It is admitted that *new* credits given
   are *acts* of *this* kind, and so are *extensions* of time on *old* debts for
   any *definite* period, and renewals of notes or other obligations.

Appeal from Ionia.   (Smith, J.)   Argued June 29 and 30,
1886.   Decided July 15, 1886.

Bill filed for appointment of receiver of assigned property. Complainants appeal. Decree reversed, and new one entered for distribution on basis of opinion.

*Webster & Millard* (*Geo. S. Hosmer*, of counsel), for complainants.

*A. A. Ellis* and *S. V. R. Trowbridge*, for defendants.

CAMPBELL, C. J. Complainants are among the creditors of Harl & Stevens, who assigned to Just & Clark, August 7, 1883.

Rumsey obtained a chattel mortgage on April 13, 1883, which he did not record until July 16, 1883, for $1,900.

French obtained an indemnity mortgage August 6, 1883, for $500. Neither of these mortgages was actually fraudulent. Between the date and recording of Rumsey's mortgage complainants and others gave credit to Harl & Stevens by sales, loans, and extensions.

On the fourteenth of March, 1885, a decree was made, and never appealed from, whereby the Rumsey mortgage was declared fraudulent and void as to creditors whose debts were contracted during the interval between the date and record of that mortgage, and a reference was ordered for proofs on that subject.

The commissioner returned proofs, which appear to us regular, and which have not been set aside below, whereby it appears that complainants and several others sold goods, lent money, and took new notes, or gave extensions on former demands, during that interval. We think these claims well proved. The only questions are upon their standing for preference over the mortgage.

Upon final hearing the court allowed such a preference to a part of the claims for entirely new transactions, but rejected the preference as to all the rest. The property seems to have been sold, so that, practically, the order made was for distribution. Under this order $500 for exemptions was allowed to diminish the amount of the Rumsey mortgage to be affected by the intermediate claims. This was

correct, as the debtors had a right, as against creditors, to do as they pleased with their exemptions.

We are unable to comprehend the precise effect of the decree as actually drawn, as it appears to be either defective or inconsistent. But as the main questions are readily reached, it is not important to examine its present operation minutely.

The first question of importance presented is whether the French mortgage, which is spoken of as subject to the Rumsey mortgage, is to be swept away, or only postponed to that.

We held in *Root v. Potter*, 59 Mich. 506–7, that an honest mortgage was not affected by its proximity to a general assignment.[1] We have no doubt that French's mortgage is entitled to preference over the *general* creditors after the $1,900 covered by Rumsey's mortgage is deducted from the assets. But French could not be allowed to profit by the avoidance of Rumsey's mortgage, because it was good against French when his own mortgage was taken, and it does not concern him whether Rumsey keeps the amount secured, or is obliged to give it up to any one else.

The same reasoning applies to the general creditors, who have no ground for attacking either of these mortgages. So far as they are concerned, both Rumsey and French would be entitled to payment in full, and therefore the funds for general distribution must be diminished to that extent.

We have no doubt that under our statutes any creditors have a right to avoid an unrecorded mortgage who have, during its absence from the record, done anything material which they may be fairly considered to have done on the basis of its non-existence. It is admitted that new credits given are acts of this kind. But so are, also, extensions of time on old debts for any definite period, and renewals of notes or other obligations. Such renewals and extensions would be regarded as valuable considerations for new prom-

---

[1]For valuable cases settling *various* questions involved in *this* branch of the law, see *Farwell v. Myers*, 59 Mich. 170; *Barnum W. & I. Works v. Speed*, Id. 272; *Kimball v. Cannon*, Id. 290; *Parsons v. Clark*, Id. 414; *Root v. Potter*, Id. 498; *Chipman v Kellogg*, 60 Id. 439; *Wilhelm v. Byles*, Id. 561; *Angell v. Pickard*, 61 Id. 564.

ises, and they would not be given by any prudent creditor if he knew his debtor was preferring some one else.

We think, therefore, that the decree of distribution should be framed on these principles: It should, after making allowance for expenses and charges out of the general fund, and not out of the preferred fund, direct the amount of $1,900, and interest from the date of the Rumsey mortgage, to be paid as follows: Five hundred dollars to Rumsey for exemptions; the remainder to be divided ratably between complainants and the other creditors whose claims were made or affected, as before mentioned, during that interval, so far as it will go. Next, the French mortgage to be paid in full, if the fund arising from the sale of the mortgaged property will suffice.

Lastly, for the balance due Rumsey on his mortgage, and for any balances due the complainants and the other partly-paid creditors, as aforesaid, they will participate ratably in the distribution of the residue.

In drawing the decree, the preferred amounts will all be fixed and declared, to prevent any future mistakes; and, unless agreed on, it will be settled in this Court according to this opinion. The costs of the appellants in this Court will be paid out of the fund.

The decree is reversed, and a new decree will be entered accordingly.

CHAMPLIN and SHERWOOD, JJ., concurred. MORSE, J., did not sit.