## In re HUXOLL.

(Circuit Court of Appeals, Sixth Circuit. February 13, 1912.)

### No 2,176.

1. COURTS (§ 366*)—FEDERAL COURTS—RULES OF DISTRIBUTION—STATE STATUTES—CONSTRUCTION.

Where the rights of a claimant in bankruptcy proceedings under a chattel mortgage depend on a state statute, it must be given the same construction in the bankruptcy courts as it has received in the highest courts of the state.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 954–957, 960–968; Dec. Dig. § 366.*

State laws as rules of decision in federal courts, see notes to Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.]

2. CHATTEL MORTGAGES (§ 197*)—FILING—STATUTES—CONSTRUCTION—"CREDITORS OF MORTGAGOR."

Comp. Laws Mich. 1897, § 9523, as amended by Pub. Laws 1907, No. 332. provides that every chattel mortgage not accompanied by an immediate delivery and followed by an actual or continued change of possession of the things mortgaged shall be absolutely void as against creditors of the mortgagor and as against subsequent purchasers or mortgagees in good faith, unless a copy be filed, as directed in the statute. *Held*, that the words "creditors of the mortgagor," as construed by the Michigan Supreme Court, mean subsequent creditors in good faith without notice of the mortgage, and are not confined to creditors who have obtained judgment or levied an attachment before the filing of the mortgage, provided they became creditors between the giving and before the filing thereof.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 430–433; Dec. Dig. § 197.*

For other definitions, see Words and Phrases, vol. 8, p. 7623.]

3. BANKRUPTCY (§ 345*)—CLAIMS—MORTGAGEE OF UNFILED CHATTEL MORTGAGE.

Comp. Laws Mich. 1897, § 9523, as amended by Pub. Laws 1907, No. 332, provides that every chattel mortgage not accompanied by an immediate delivery and followed by an actual and continued change of possession of the things mortgaged shall be absolutely void as against creditors of the mortgagor and as against subsequent purchasers or mortgagees in good faith, unless a copy be filed, as directed in the statute. *Held* that, where a chattel mortgage is unfiled, subsequent creditors of the mortgagor are not given any lien on the mortgaged property by vir-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tue of such statute, and hence, on a mortgagor becoming a bankrupt and the unfiled mortgage being waived, the mortgagee is not postponed to the rights of such subsequent creditors, but is entitled to share with them in the distribution of the proceeds of the mortgaged property.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 531, 532, 539, 540; Dec. Dig. § 345.*]

Petition for Revision of Proceedings of the District Court of the United States for the Southern Division of the Western District of Michigan.

In the matter of bankruptcy proceedings of Ottenwess & Huxoll, bankrupts. From an order of the District Court reversing referee's order of distribution on a petition to revise by postponing the claim of Clemons Huxoll to those of creditors who became such between the giving and filing of a mortgage to petitioner, he appeals. Reversed and remanded for further proceedings.

Martin H. Carmody, for petitioner.
H. A. Thornton, for respondent.

Before WARRINGTON and KNAPPEN, Circuit Judges, and SATER, District Judge.

KNAPPEN, Circuit Judge. This case involves only a question of priority between creditors. February 1, 1909, the bankrupts, on beginning business, gave petitioner a chattel mortgage, which has been treated as for $4,600, on a bakery plant and outfit in Grand Rapids, Mich. The mortgage was not filed, as provided by the Michigan statute, until November 30th following. There is no claim of fraudulent intent in delaying to file the mortgage. Meanwhile the claims of a large number of creditors of the bankrupt accrued. December 2d following one of the bankrupts gave to a trustee a chattel mortgage on the bakery property to secure ratably the claims of all creditors (except petitioner here) whose claims accrued between the giving and filing of petitioner's mortgage. The petition for adjudication in bankruptcy was filed five days later. Petitioner presented, and was allowed, a claim as a general creditor for the amount of the mortgage indebtedness, with interest, the mortgage security being waived except as petitioner asked that the mortgage be declared a first lien on the bankrupts' statutory trade exemptions of $500, which was done, the question of the validity of this latter lien, however, as against the trust mortgage, being reserved by the referee. The latter held petitioner's mortgage void (except as to the bankrupt's exemptions) as against the claims of creditors who became such between the giving and the filing of petitioner's mortgage (under an admission of petitioner's counsel that "none of the objecting creditors had notice of the existence of said chattel mortgage")—the order of distribution, however, permitting petitioner to share ratably with all general creditors (including the class last referred to) in the distribution of the assets. The District Court reversed the referee's order of distribution by postponing petitioner's claim to those of creditors who became such between the giving and filing of petitioner's mort-

gage. The correctness of this order of distribution is the only question before us.

[1, 2] This question turns upon the provisions of the Michigan statute, which are to be interpreted here as construed by the highest courts of that state. Thompson v. Fairbanks, 196 U. S. 516, 25 Sup. Ct. 306, 49 L. Ed. 577; York Mfg. Co. v. Cassell, 201 U. S. 344, 26 Sup. Ct. 481, 50 L. Ed. 782; In re Doran (C. C. A. 6) 154 Fed. 467, 471, 83 C. C. A. 265. Section 9523 (Comp. Laws Mich. 1897), as amended by Act 332 of the Public Acts of 1907, provides that every chattel mortgage not "accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things mortgaged, shall be absolutely void as against creditors of the mortgagor, and as against subsequent purchasers or mortgagees in good faith," unless a copy thereof be filed as directed in the statute. The words "creditors of the mortgagor" are construed by the Supreme Court of Michigan to mean subsequent creditors in good faith and without notice of the mortgage. Fearey v. Cummings, 41 Mich. 376, 1 N. W. 946; Root v. Harl, 62 Mich. 420, 29 N. W. 29; Buhl Iron Works v. Teuton, 67 Mich. 623, 35 N. W. 804; Cutler v. Steele, 85 Mich. 627, 48 N. W. 631; First Nat. Bank v. Guntermann, 94 Mich. 125, 126, 53 N. W. 919; Baker v. Parkhurst, 119 Mich. 542, 78 N. W. 643.

This statutory invalidity of an unfiled chattel mortgage is not confined to those who have obtained judgment or levied attachment before the filing, but extends to all creditors who became such after the giving and before the filing of the mortgage. Fearey v. Cummings, supra; Buhl Iron Works v. Teuton, supra; People v. Burns, 161 Mich. 169, 173, 125 N. W. 740, 137 Am. St. Rep. 46. In the first case cited it was said (41 Mich. page 383, 1 N. W. 951) that, if a mortgage "was not put on file prior to plaintiffs' becoming creditors, it was invalid as against them; the law being that those who became creditors whilst the mortgage is not filed are protected, and not merely those who obtained judgment and levied attachments before the filing."

In People v. Burns substantially the same language is used. In Buhl Iron Works v. Teuton, 67 Mich. 623, 628, 35 N. W. 804, 806, the mortgage was said to be "actually void as to creditors who have obtained liens upon the property, or who became such after the giving of the security." In Lord v. Wirt, 96 Mich. 415, 56 N. W. 7, it was said that persons who sell goods to a merchant during the time a chattel mortgage is withheld from record, without actual notice of its existence, are not in fact defrauded, as their rights are in no wise jeopardized by the giving of the mortgage.

But as said in Fearey v. Cummings:

"No one as creditor at large can question the mortgage. He can only do that by some process or proceeding against the property."

For a review of many of the Michigan decisions to this general effect, see Dempsey v. Pforzheimer, 86 Mich. 652, 49 N. W. 465, 13 L. R. A. 388. It is not in all cases necessary, however, in order to enable subsequent creditors to avoid the mortgage, that execution

or attachment be levied, even after the mortgage has been filed. It would seem that any proceeding by which the creditors actually fasten upon the property would answer the purpose. In Fearey v. Cummings (above cited) it was held that "garnishee process is such proceeding" (for questioning the mortgage); and in that case a creditor who became such between the making and filing of the mortgage was held entitled to maintain garnishment proceedings (begun after the mortgage was filed) against the mortgagee, who had taken the mortgaged property, for the recovery of his judgment against the principal defendant, on the ground of the invalidity of the mortgage as against the plaintiff in garnishment, under a statute permitting such remedy upon affidavit that the garnishee "has property * * * in his hands or under his control belonging to the (principal) defendant, or that such person (garnishee) is indebted to the (principal) defendant." And under garnishment statutes existing when the rights of the subsequent creditors in this case accrued, had the mortgagee seized the property under garnishment proceedings taken at any time before the bankruptcy, he could have been made liable to such subsequent creditors, even though he had actually disposed of the mortgaged property. Heineman v. Schloss, 83 Mich. 153, 47 N. W. 107; Baker v. Parkhurst, 119 Mich. 542, 78 N. W. 643. As will be seen later, the priorities of subsequent creditors can be enforced under an assignment for the benefit of creditors; and a second mortgage, securing debts contracted while the first mortgage was not recorded, is such a lien as will enable the enforcement of the statutory priority. Dempsey v. Pforzheimer, supra. In the case before us, however, none of the creditors had before the bankruptcy taken any steps to fasten upon the property, or by judicial proceedings to assert any rights superior to the mortgagee. Nor was there any assignment for the benefit of creditors. We for the present lay out of account the trust mortgage given a few days before the bankruptcy, as its validity and the rights of creditors thereunder must be determined by other considerations than those we are now discussing.

[3] The crucial question, as concerns the rights of subsequent general creditors as against the mortgage, relates to the nature of their superior rights (as given by the Michigan statute) as the same existed at the time bankruptcy occurred; that is to say, whether such superior rights amount to a priority under section 64b (5) of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 563 [U. S. Comp. St. 1901, p. 3447]), which gives priority of payment to "debts owing to any person who by the laws of the states or the United States is entitled to priority"; or (in the absence of proceeding to fasten upon the property) whether such superior rights amount to an actual and existing lien; or whether, on the other hand, they amount merely to a right to fasten such lien. In our opinion, the mortgage filing statute involved here is not within the purview of 64b (5) of the bankrupt act, the nature of which section is discussed in Re Bennett (C. C. A. 6) 153 Fed. 673, 82 C. C. A. 531; and in Re Jones (D. C.) 151 Fed. 108. If these superior rights amount to a mere right to fasten a lien, as distinguished from an actually established lien, they could not be

given effect under the bankrupt act (York Mfg. Co. v. Cassell, supra; Crucible Steel Co. v. Holt [C. C. A. 6] 174 Fed. 127, 98 C. C. A. 101): for the adjudication of bankruptcy does not operate as an attachment of the property. The fact that creditors have the right up to the very moment of bankruptcy to fasten upon the mortgaged property is not important (Crucible Steel Co. v. Holt, supra, 174 Fed. at page 129, 98 C. C. A. 101). Indeed, had the subsequent creditors attempted, within four months of the bankruptcy, to fasten upon the mortgaged property by legal proceedings, "all judgments, levies, attachments or other liens obtained" thereby would, under section 67f of the bankrupt act, be discharged by the bankruptcy, and the trustee subrogated to the rights acquired by such levies, etc., for the benefit of the bankrupt's estate; that is to say, for the benefit of creditors generally. In re Martin, 193 Fed. 841, decided by this court February 7, 1912, and cases there cited. The effect of such proceedings within four months of bankruptcy would thus be, in this case, that Huxoll as mortgagee, instead of being postponed to subsequent creditors, would share ratably with them. The cases of In re Ducker, 134 Fed. 43, 67 C. C. A. 117 (decided by this court), and In re Doran (D. C.) 148 Fed. 327, were cited by the district judge in support of his opinion. The Ducker Case is authoritative as to the method of distribution in case the priority of subsequent creditors over the mortgage creditor is recognized. Upon the question of legal priority, it was substantially overruled by York Mfg. Co. v. Cassell, supra. See, also, In re Doran (C. C. A. 6) 154 Fed. 467, 83 C. C. A. 265, and Crucible Steel Co. v. Holt, supra. The decision of the District Court in the Doran Case is not strongly in point, for in that case the mortgagee was permitted to share ratably with other creditors, which is all the mortgagee asks here.

We are thus brought to the question whether the Michigan statute creates of itself a lien upon the mortgaged property prior to the lien of the mortgage, requiring no proceedings of any kind to its fastening; or whether the statute merely creates a right of priority without actual lien, requiring a proceeding of some kind to the fastening of a lien. The decisions which seem to lend the most support to the view of an actual lien are Root v. Harl, 62 Mich. 420, 29 N. W. 29, and Kennedy v. Dawson, 96 Mich. 79, 81, 82, 55 N. W. 616, both of which arose under general assignment for the benefit of creditors. Root v. Harl was cited by the district judge in support of the order of distribution made. In that case, under a bill for the appointment of a receiver of property conveyed under general assignment for the benefit of creditors, a mortgage not actually fraudulent had been declared void as to creditors whose debts were created between the giving and filing of the mortgage. In applying the rule of distribution, the doctrine was asserted that:

"Any creditors have a right to avoid an unrecorded mortgage who have during its absence from the record done anything material which they may be fairly considered to have done on the basis of its nonexistence."

The question of actually existing lien was not in terms discussed. In Kennedy v. Dawson, 96 Mich. 79, 81, 82, 55 N. W. 616, in which

replevin was brought by the mortgagee against the general assignee of the mortgagor, the court, in setting aside an objection that the rights of the parties could not be worked out in this proceeding, said:

"The assignee is the representative of all the creditors, including those whose rights were injuriously affected by withholding the mortgage from record. As a representative of such creditors, he had the right to retain possession for their protection. * * * The deed of assignment transferred to the defendant (assignee) the general title of the goods, subject to the plaintiff's (mortgagee's) lien, and, in addition to this, a lien on the property as a representative of the special class of creditors, which lien was entitled to precedence over that of the plaintiff (mortgagee)."

In Dempsey v. Pforzheimer, 86 Mich. 652, 662, 49 N. W. 465, 468 (13 L. R. A. 388), it was said:

"It would seem to be settled in Root v. Harl, 62 Mich. 420 [29 N. W. 29] that, when an assignment is made by a debtor for the benefit of creditors, such creditors as are the defendants in this case can, upon the equity side of the court, attack the unrecorded mortgage and obtain a preference over it, although they have no lien whatever upon the debtor's property; and that they are not 'general creditors' in such a sense that they cannot attack the mortgage without first obtaining a lien by legal process or otherwise."

In Krolik v. Root, 63 Mich. 562, 568, 30 N. W. 339, 341, where creditors who became such during the life of an unrecorded mortgage were seeking, by creditor's bill, to avoid the mortgage, as well as the rights of purchasers of the mortgaged property, it was said:

"The defendants' holding an unrecorded mortgage did not give the complainants a lien upon the goods."

Taking these decisions together, we are disposed to the view that they mean no more than that the assignee is by the assignment given a lien upon the property, which lien did not before exist. If this is all they mean, then the superior equity cannot be enforced in bankruptcy, for, as decided in York Mfg. Co. v. Cassell, the bankruptcy does not operate as an attachment or give to the trustee a lien not before existing. The fact that an assignee for the benefit of creditors is by the assignment given a lien does not of itself give such a lien to the trustee in bankruptcy. See Cincinnati Equipment Co. v. Degnan (C. C. A. 6) 184 Fed. 834, 843, 107 C. C. A. 158.

It is true that the case before us differs from the cases of York Mfg. Co. v. Cassell, In re Doran, and Crucible Steel Co. v. Holt, in this: That by virtue of the statutes in those cases only such subsequent creditors as took proceedings for fastening a lien before the mortgage instrument was filed could receive protection; while here the proceeding could be taken at any time after the filing of the mortgage. But this difference is not, in our opinion, important, for in York Mfg. Co. v. Cassell and Crucible Steel Co. v. Holt the mortgage instruments involved had not been filed when bankruptcy occurred, and so the right of subsequent creditors to fasten upon the property existed there as here up to the very moment of bankruptcy. As said in Crucible Steel Co. v. Holt, 174 Fed. 129, 98 C. C. A. 103:

"No creditor has fastened any lien upon them (the goods), although several of them were in a condition, and had the right, to do so."

We are constrained to conclude that the subsequent creditors we are considering had no actual lien upon the mortgaged property at the time bankruptcy occurred, and that therefore, under the bankruptcy act, the mortgagee was entitled to share ratably with general creditors.

This conclusion requires a reversal of the order of distribution made by the District Court. We are not required, upon this record, to consider the rights of subsequent creditors by virtue of the trust mortgage, which petitioner attacks as an unlawful preference. It was provided in the stipulation of counsel, in connection with the statement of facts in the record, that rights held through such trustee "shall not in any way be affected by the matters hereby stipulated."

The validity of petitioner's lien (as against the trust mortgage) upon the bankrupt's exemptions is likewise not before us; the question having been reserved by the referee.

The order of the District Court will be reversed, and the case remanded for further proceedings not inconsistent with this opinion.