## In re DAGWELL.

(District Court, E. D. Michigan, N. D. February 21, 1920.)

### No. 952.

1. COURTS ⬦366(18)—LAW GOVERNING VALIDITY AND EFFECT OF CHATTEL MORTGAGES.

Questions concerning the validity and construction of a chattel mortgage and the interpretation and effect of state statutes in regard thereto, when arising in bankruptcy proceedings, are governed by the local law.

2. CHATTEL MORTGAGES ⬦90—TEMPORARY WITHDRAWAL FROM RECORDING OFFICE NOT AFFECTING VALIDITY.

Under the law of Michigan, the temporary withdrawal of a chattel mortgage from the office where it is filed does not affect its validity or effect, where no rights were prejudiced thereby.

3. CHATTEL MORTGAGES ⬦18—MORTGAGE OF AFTER-ACQUIRED PROPERTY VALID.

Under the law of Michigan, a chattel mortgage covering after-acquired property of the same kind to be added to that owned by the mortgagor when the mortgage was executed, as additions to a stock of merchandise, is valid, both as between the parties and as against third persons.

4. CHATTEL MORTGAGES ⬦124—INCLUDED AFTER-ACQUIRED PROPERTY.

A chattel mortgage to secure purchase money due on a stock of groceries, covering the stock and some horses, by which mortgagor "is given the right to conduct a grocery business in the ordinary manner, and all increase of said stock" to be included in the mortgage, *held* to cover additions made to the grocery stock in the course of the business.

5. BANKRUPTCY ⬦184(2)—DELAY IN RENEWING CHATTEL MORTGAGE NOT INVALIDATING IT.

That an affidavit in renewal of a chattel mortgage was not filed until after expiration of one year from its first filing, as required by Comp. Laws Mich. 1915, § 11991, *held* not to render the mortgage invalid as to any general creditor in bankruptcy of mortgagor, under the statutory proviso that the mortgage shall be valid if the affidavit is filed before any purchase of the property or other mortgage or lien acquired in good faith.

6. BANKRUPTCY ⬦163—FILING AFFIDAVIT OF RENEWAL OF CHATTEL MORTGAGE NOT PREFERENTIAL "TRANSFER OF PROPERTY."

Filing of an affidavit of renewal of a chattel mortgage within four months prior to bankruptcy of mortgagor *held* not a preferential transfer, as the mere filing of such an instrument of renewal is not a "transfer of property," within the Bankruptcy Act (Comp. St. § 9585 et seq.).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Transfer.]

In Bankruptcy. In the matter of Elton C. Dagwell, bankrupt. On review of order of referee. Reversed.

C. S. Reilley, of Cheyboygan, Mich., for claimant.
Hall & Gillard, of Grand Rapids, Mich., for trustee.

TUTTLE, District Judge. This matter is before the court on petitions for review of an order of one of the referees in bankruptcy for this district. Briefly, the material facts are as follows:

On June 27, 1916, the claimant executed and delivered to the bankrupt a chattel mortgage, securing an indebtedness in the sum of $1,900, representing the purchase price of the property covered by said mort-

gage, consisting mainly of a certain stock of merchandise and store fixtures.   It was recited in the instrument that the mortgagor—

"is given the right to conduct a grocery business in the ordinary manner and all increase of said stock made and purchased by said second party is to be included under the terms of this contract of purchase."

This mortgage was filed, pursuant to the Michigan statute, on June 29, 1916.   By another Michigan statute, hereinafter quoted, provision is made for the filing of an affidavit of renewal of such a mortgage within one year from the date of the filing thereof.   No such affidavit of renewal, however, was filed until November 2, 1917, at which time the amount still due and secured by such mortgage was $1,200.   Between the date of the filing and the date of the renewal of the mortgage, debts to other creditors of the mortgagor were incurred amounting to more than the sum just mentioned.   None of such creditors, however, had obtained any lien or process against said mortgagor or any of his property prior to the filing of the petition in bankruptcy herein.   On February 22, 1918, the mortgagee, through her attorney, borrowed this mortgage from the township clerk, in whose office it was filed, and removed it, for the purpose of making a copy thereof and checking over the items of the inventory and description attached thereto, and returned the instrument to said clerk on February 27th. Immediately thereafter the mortgagor filed his petition in bankruptcy herein, and was adjudicated a bankrupt on February 28, 1918, and shortly afterwards the present trustee was duly elected.

Thereupon the said mortgagee, as a secured creditor, filed proof of claim for approximately $1,100 (which is conceded to be the balance due on the debt secured by the mortgage in question).   Objections to the allowance of said claim, as secured, were filed by the trustee, and testimony was taken before the referee, transcript of which has been filed by the referee with his return and certificate thereon.

Three questions were raised and argued before the referee, as follows:

First. Did the temporary removal of the chattel mortgage from the office of the township clerk invalidate it as against the trustee?

Second. Does the mortgage, if valid, cover, as against the trustee, additions to the stock of merchandise in question acquired after the execution and filing of said mortgage?

Third. Did the delay in the renewal of the mortgage render it invalid as against creditors who became such during the period after the expiration of one year from the filing thereof and before the renewal on November 2, 1917, under the circumstances disclosed by the record?

The referee decided the first two questions in favor of the claimant, and the third in favor of the trustee.   Both parties have filed petitions for review.   The same questions have been presented and argued before the court.   They will be considered in the order named.

[1] It is, of course, well settled that questions concerning the construction and validity of a chattel mortgage and the interpretation and effect of state statutes in regard thereto are questions of local law, as

to which the settled rules adopted by the courts of such state will be followed by the federal court. Thompson v. Fairbanks, 196 U. S. 516, 25 Sup. Ct. 306, 49 L. Ed. 577; Bryant v. Swofford Bros. Dry Goods Co., 214 U. S. 279, 29 Sup. Ct. 614, 53 L. Ed. 997; In re Doran, 154 Fed. 467, 83 C. C. A. 265 (C. C. A. 6); In re Huxoll, 193 Fed. 851, 113 C. C. A. 637 (C. C. A. 6); Detroit Trust Co. v. Pontiac Savings Bank, 196 Fed. 29, 115 C. C. A. 663 (C. C. A. 6). The proper disposition, therefore, of the questions involved herein, will be controlled by the decisions of the Michigan Supreme Court applicable.

[2] 1. It is not claimed that there was any fraudulent or wrongful motive in the temporary removal of this chattel mortgage; nor does it appear that any rights or equities accrued to any one as a result of such removal, or that any person has been prejudiced thereby. Under these circumstances it is settled in Michigan that the mere fact that such a mortgage has been temporarily removed from the office where it has been filed does not affect the validity or effect thereof. Woodruff v. Phillips, 10 Mich. 500. Indeed, in view of the statutory requirement that the clerk in whose office such a mortgage has been filed shall alphabetically record the name of each mortgagor and the time of the filing of each mortgage, the rule thus announced seems reasonable and just. The opinion of the referee is affirmed in this respect, and the contention of the trustee to the contrary must be overruled.

[3] 2. It is the settled law in Michigan that a chattel mortgage covering after-acquired property of the same kind as, and to be added to, property actually owned by the mortgagor, and covered by such chattel mortgage at the time of its execution, such as additions to a stock of merchandise, to be purchased by the mortgagor after the time of the execution of the mortgage and added to such stock, is valid both as between the parties thereto and as against third parties, in the same manner and to the same extent as any other kind of chattel mortgage. American Cigar Co. v. Foster, 36 Mich. 368; Robson v. Michigan Central R. R. Co., 37 Mich. 70; Eddy v. McCall, 71 Mich. 497, 39 N. W. 734; Louden v. Vinton, 108 Mich. 313, 66 N. W. 222.

[4] I cannot agree with the contention that this chattel mortgage does not by its terms purport to cover after-acquired additions to the stock of merchandise in question. It seems to me that, bearing in mind the fact that nearly all of the property described in the mortgage consisted of this stock of merchandise and of the fixtures in the store in which such stock was located, the clause providing that the mortgagor "is given the right to conduct a grocery business in the ordinary manner and all increase of said stock made and purchased by said second party [the mortgagor] is to be included under the terms of said contract of purchase [the chattel mortgage]," clearly was intended, on the one hand, to permit the mortgagor to sell in the ordinary manner the merchandise thus incumbered, and, on the other hand, and in return for that privilege, to protect the mortgagee by subjecting any subsequent addition to this stock to the mortgage. The argument that the word "increase," here used, was intended to apply only to the horses covered by the mortgage, is, in my opinion, a strained and far-fetched

construction of the meaning of this term. This word is in common use, and means "that which results from or is produced by increasing; an addition or increment." Webster's New International Dictionary. "All increase of said stock made and purchased by said second party" is, without doubt, intended to refer to any addition or increase to such stock made by the mortgagor after the execution of the mortgage. In this respect, also, the contention of the trustee must be overruled, and the opinion of the referee sustained.

[5] 3. It is further urged by the trustee, and was held by the referee, that as this chattel mortgage was not renewed, as required by the Michigan statute applicable, within one year from the filing thereof, it is void as against the creditors of the mortgagor who became such during the period of the delay in making such renewal. One of the sections of the Michigan statutes governing the filing of chattel mortgages, being section 11991 of the Michigan Compiled Laws of 1915, provides as follows:

"Every such mortgage shall cease to be valid as against the creditors of the person making the same, or subsequent purchasers or mortgagees in good faith, after the expiration of one year from the filing of the same, or a copy thereof, unless within thirty days next preceding the expiration of the year, the mortgagee, his agent or attorney shall make and annex to the instrument or copy on file as aforesaid, an affidavit setting forth the interest which the mortgagee has by virtue of said mortgage in the property therein mentioned, upon which affidavit the register of deeds and township or city clerk shall indorse the time when the same was filed: Provided, that such affidavit being made and filed before any purchase of such mortgaged property shall be made, or other mortgage received or lien obtained thereon in good faith, shall be as valid to continue in effect such mortgage, as if the same were made and filed within the period as above provided."

Under the language of the proviso in this section, the failure to renew a chattel mortgage within the year following its filing does not affect its validity as against creditors who, as in the present case, have not, prior to the filing of the required affidavit of renewal, obtained liens on the property covered by such mortgage, notwithstanding the fact that such creditors extended credit to the mortgagor while the mortgagee was thus delinquent in respect to such renewal. Manwaring v. Jenison, 61 Mich. 117, 27 N. W. 899; Wade v. Strachan, 71 Mich. 459, 39 N. W. 582; Symons Bros. & Co. v. Brink, 194 Mich. 389, 160 N. W. 638; Detroit Trust Co. v. Pontiac Savings Bank, supra.

[6] Nor is there merit, in my opinion, in the contention that, as this mortgage was not renewed until within four months prior to the time of the filing of the petition in bankruptcy, it can be avoided by the trustee as a preferential transfer under the Bankruptcy Act. In the first place, there is no evidence tending to show that the mortgagor was insolvent at the time either of the execution or of the filing or of the renewal of this mortgage, or that the mortgagee or any agent of hers at any of such times had reasonable cause to believe that the enforcement of said mortgage would effect a preference, or that there was any intent on the part of either the mortgagor or the mortgagee to hinder, delay, or defraud any creditors of the former.

Furthermore, the filing of the affidavit of renewal within the period of four months prior to bankruptcy could not operate as a preference,

because the mere filing of such an instrument of renewal cannot properly be called a transfer of property within the meaning of the Bankruptcy Act. Thompson v. Fairbanks, supra.

Finally, the original execution of this mortgage could not constitute a preference, even if the elements of insolvency and reasonable cause to expect a preference were present, as the execution of such mortgage antedated the statutory four months period. The trustee does not represent any creditor entitled, under the Michigan statute hereinbefore quoted and applicable, to complain of the delay in such renewal or to avoid such mortgage. Martin v. Commercial National Bank, 245 U. S. 513, 38 Sup. Ct. 176, 62 L. Ed. 441.

It results that the contention of the trustee and the holding of the referee in this connection must be overruled and the case remanded for further proceedings not inconsistent with the terms of this opinion.