## In re HOPKINS.

(District Court, D. Wyoming. November, 1922.)

### No. 532.

**1. Courts ⬤⟾366(18)—State Supreme Court's construction of state statute followed by federal court.**

State Supreme Court's construction of state statute governing chattel mortgages will be followed by federal court.

**2. Chattel mortgages ⬤⟾197(1)—"Creditor," within statute making renewed mortgages void unless filed, applicable only to creditor who has lien.**

Comp. St. Wyo. 1920, § 4697, making renewed chattel mortgage void as against "creditor" unless filed in accordance with section 4687, *held* not applicable to general creditor, but only to creditor who has perfected his right by some form of judicial process, which attaches a lien on the property so as to bring creditor into privity therewith.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Creditor.]

In Bankruptcy. In the matter of Dave Hopkins, alleged bankrupt. On application by creditors for injunction to restrain sale of property by chattel mortgagee and for appointment of receiver. Denied.

Rush L. De Nise, of Rock Springs, Wyo., and Arthur Piggott, of Cheyenne, Wyo., for petitioners.

T. S. Taliaferro, Jr., and Walter Muir, both of Rock Springs, Wyo., for alleged bankrupt.

KENNEDY, District Judge. The above-entitled proceeding is before the court upon application for an injunction, in which the petitioning creditors seek to restrain the sale of the property which had been taken possession of by the mortgagee of the alleged bankrupt prior to the filing of the petition in bankruptcy, and to secure the appointment of a receiver by the bankruptcy court to take possession of this and other property of the alleged bankrupt pending a final hearing upon the creditors' petition in bankruptcy. The petition and affidavits supporting the prayer for the restraining order allege the invalidity of the chattel mortgage, the insolvency of the alleged bankrupt, and the commission on his part of acts of bankruptcy.

A temporary restraining order was issued, and the matter set for hearing upon notice to the alleged bankrupt and the mortgagee, upon which the alleged bankrupt entered an appearance. An answer was filed, supported by affidavits, denying the principal allegations of the petition for a temporary injunction and appointment of a receiver, and upon the issues thus joined a hearing was had. The principal facts apparent from the evidence in the form of affidavits before the court necessary for a determination of the matter in hand, are substantially as follows:

The alleged bankrupt, Hopkins, for a number of years had been engaged in the jewelry business in the town of Green River, Sweetwater county, in this district; that on the 8th day of August, A. D. 1918, the alleged bankrupt executed and delivered to one Frank R. Croker a chattel mortgage covering the stock of merchandise of the mortgagee in the sum of $2,500, which mortgage was subsequently filed in the office of the clerk of Sweetwater county on the 16th day of August, A. D. 1918; that at the time this matter came into controversy between the parties there was due and unpaid upon the note which said mortgage secured the sum of $1,324; that a petition in involuntary bankruptcy by certain of the general creditors of the alleged bankrupt was filed in this court on the 24th day of October, A. D. 1922; that some time previous to the last-mentioned date the mortgagee, Croker, took possession of the stock of merchandise covered by his mortgage, and advertised the same for sale under the authority and power in said mortgage contained, the showing upon the application for the preliminary restraining order reciting that said sale was advertised to take place on the 28th day of October, A. D. 1922; that the chattel mortgage on its face did not contain any due date, although there was evidence upon the hearing tending to show that the note which it secured was first given for a period of six months. The evidence shows and the parties agree that there was no renewal certificate or affidavit ever filed in the office of the county clerk; that on the 8th of August, A. D. 1922, a judgment was recovered against the alleged bankrupt on behalf of a creditor, who is one of the petitioning creditors here, in the sum of approximately $500, an execution issued thereon on the 19th day of September, A. D. 1922, which the petition for the restraining order in this proceeding shows was returned on the 13th day of October, A. D. 1922, unsatisfied, although other facts appearing in the case indicate that steps were taken to perfect the levy on

the property of the alleged bankrupt under an execution, and that the sheriff before making said levy or perfecting the same demanded a bond indemnifying him against any damage he might suffer on account of the execution having been improvidently issued, which the judgment creditor failed to give; and that for this reason, and the further reason, as indicated by the return of the sheriff upon said writ of execution, that the same showed on its face that it was void, the execution was returned as unsatisfied by said sheriff, with the statement contained in said return that no property was taken thereunder.

There are other allegations of the answer denying the insolvency of the alleged bankrupt and traversing other allegations of the petition in bankruptcy, which would only become material upon the hearing of the proceeding upon its merits, but which do not seem to the court to be material in deciding the matter of the petitioners' right to a restraining order and a receiver. The principal contention of the petitioners is that on account of the failure of the mortgagee to file a certificate or affidavit of renewal of said chattel mortgage under the statutes of the state of Wyoming, the mortgage thereby became null and void as to the general creditors of the alleged bankrupt.

[1] Counsel for the alleged bankrupt, in denial of the allegations of the petition for a restraining order, assert the validity of the mortgage as against the general creditors, irrespective of a renewal of the mortgage, and maintain earnestly that a general creditor of the bankrupt is not in a position to challenge the validity of the mortgage, unless he has placed himself in the position of having fastened his claim upon the property through a levy or some form of judicial process. It is the further contention of counsel that this principle has been enunciated in a construction of the chattel mortgage statutes of the state of Wyoming by the Supreme Court of that state. If this be true, it becomes a rule to be followed by this court. Petition of Huxoll (C. C. A. 6th Cir.) 27 Am. Bankr. Rep. 579, 193 Fed. 851, 113 C. C. A. 637, and cases there cited.

Section 4687 of the Wyoming Compiled Statutes of 1920 provides as follows: "Every mortgage, bond, conveyance or other instrument intended to operate as a mortgage of goods, chattels or personal property, which shall not be accompanied by immediate delivery and be followed by an actual and continued change of possession of the goods, chattels and personal property so

mortgaged shall be absolutely void as against the creditors of the mortgagor, and as against subsequent mortgagees, or purchasers in good faith, unless said mortgage, bond, conveyance or other instrument intended to operate as a chattel mortgage shall be filed as hereinafter provided." Section 4697, without quoting the same in full, provides as to the filing of renewals, and that in the event of failure to so file, a mortgage shall be void as to the same parties specified in the foregoing quoted section. The case in which these sections were discussed and construed by the Supreme Court of this state is First National Bank of Rock Springs v. Ludvigsen, 8 Wyo. 230, 56 Pac. 994, 57 Pac. 934, 80 Am. St. Rep. 928.

In that case the question arose in a replevin suit on the part of a mortgagee against the administratrix of a deceased mortgagor. The principal question decided was that the term "creditors of the mortgagor," as found in the Wyoming statute, included antecedent as well as subsequent creditors as related to an unfiled or in that case an unrenewed mortgage. There was, however, evidently in the mind of the court the purpose of further defining the term as used in the statute for the purpose of fixing the status of such a creditor as related to a mortgagee with an unrenewed mortgage, so far as determining the rights of such a creditor in asserting his claim against such a mortgage.

As I have analyzed the case upon this phase, the court held that a creditor, whether antecedent or subsequent, in order to enforce the right given him under a statute as a preference against an unrenewed mortgage, must have perfected his right by some sort of judicial process, by levy or attachment, which actually fastens or fixes his claim to the property covered. A few excerpts from the opinion of the court in that case, I think, will justify this conclusion. On page 241 (56 Pac. 997) the language is as follows: "As a general rule an administrator acquires no better title than the decedent had. It is also true as a general rule that without judgment or other legal process, or without a right by law to have the property of his debtor seized and sold for his benefit, a creditor is not in a position to assert his rights against a mortgage which is void as to creditors. He is not permitted to assail or question the validity of the mortgage until by judicial process or in some manner recognized by law the property has become bound for the payment of his debt, or as one court has expressed

it, until his debt is fastened on the debtor's property 'by law, judicial process, or in some other way; for until his debt is so fastened, he has no right to or interest in his debtor's property, and can not ask the court to control its disposition, nor can he prevent the debtor from exercising full and complete dominion over it.' "

At page 249 (56 Pac. 1000) the following language is found: "In none of the cases cited involving the right of an assignee, receiver, or representative of the insolvent estate of the decedent was the fact deemed material that the creditors had not secured a specific lien by judgment or process. There could be no specific lien, because by the operation of law the creditors were denied a remedy of that character; but their rights were provided for in other ways just as completely, and under forms of law just as legal, with the exception that every creditor stood upon the same footing, and no individual creditor could by the exercise of diligence appropriate the property to his sole advantage."

At page 254 (56 Pac. 1002) the court say: "No doubt a creditor without judgment or process in case of a living mortgagor, or without an allowed claim, or one established by judgment in case of a deceased mortgagor, is not in a position to attack a void mortgage; and had Ludvigsen in his lifetime, before the creditors had obtained judgment and execution, or any lien on the property, made a bona fide transfer of the property to the mortgagee in payment of the mortgage, the remedy of the creditors would have been defeated."

It is true that in that case the court held that the creditors' rights were superior to the renewed mortgage, but for the reason that the claim of the mortgagee was being enforced against the representative of the deceased person and that under the laws of Wyoming that representative in a probate proceeding is given possession of the entire property and charged with the liquidation of the debts. While the statute governing chattel mortgages was taken from Ohio, where a different rule of probate prevails, the probate statute of Wyoming was taken from California, which must govern in determining the rights and duties of an administrator in probate proceedings.

The principal point upon this phase of the case as determined by that decision is that, on account of the death of the mortgagor and the probate laws of the state, which affect the property, its distribution, and the payment of the debts of the de-

ceased, the creditors were thereby prohibited from fastening any lien upon the property by virtue of any judicial process, but are relegated to the procedure of prosecuting the claim under the methods provided by the probate law. If, however, the opinion of the Supreme Court in this case could in any sense be considered "obiter," there seem to have been several other decisions of the highest courts of other states giving the same construction to chattel mortgage statutes practically identical with those in Wyoming, which decisions are approved by the Supreme Court of the United States. In the case of Holt v. Crucible Steel Co., 224 U. S. 262, 32 Sup. Ct. 414, 56 L. Ed. 756, 27 Am. Bankr. Rep. 856, the Supreme Court, in considering a similar statute from the state of Kentucky, in upholding a construction of the statutes by the Court of Appeals of that state, uses the following language at page 267 (32 Sup. Ct. 415): "Such was the view of the Circuit Court of Appeals, and we are at least unable to say that it was wrong. It follows that, as here the subsequent creditors had not fastened any lien upon the property covered by the mortgage prior to the proceedings in bankruptcy by which the title passed to the trustee, the mortgage, although unrecorded, was valid and effective against them."

In construing a similar statute of the state of Ohio, from which the Wyoming statute is taken, the Supreme Court of the United States, in the case of York Manufacturing Co. v. Cassell, 201 U. S. 344, at page 351, 26 Sup. Ct. 481, 484 (50 L. Ed. 782, 15 Am. Bankr. Rep. 633), uses the following language: "The court held that the mortgage was not void for lack of filing, as between the parties thereto, but that the statute only avoided the instrument as to those creditors who, between the time of the execution of the mortgage and the filing thereof, had taken steps to 'fasten upon the property for the payment of their debts.' As against such as had in the interim secured liens by attachment, execution or otherwise, the mortgage would be void. When filed with the recorder the instrument became valid as against all persons, except those whose rights had attached upon the property before the recording of the instrument."

In the case of People's Savings Bank v. Bates, 120 U. S. 556, at page 562, 7 Sup. Ct. 679, 681 (30 L. Ed. 754) the court, in construing the statute of Michigan, which is identical with that of Wyoming, so far as the provisions relating to the filing of

mortgages is concerned, say: "Besides, as the court below held, upon this branch of the case, the bank, in its capacity as a creditor at large, is not entitled to attack the prior mortgage as fraudulent upon the grounds just stated. This general proposition is conceded by counsel, the usual way, he admits, being for the creditor, who has no particular claim in the property, to acquire a specific interest therein through the levy of an attachment or execution. Hence, he says, that while it is often stated that conveyances of this sort are void as to creditors generally, they must put their claims in the form of a judgment or attachment before they are in a position to attack them— the object of the attachment or execution being to bring the attacking party into privity with the property."

In the case of Detroit Trust Co. v. Pontiac Savings Bank, 237 U. S. 186, 35 Sup. Ct. 509, 59 L. Ed. 907, 34 Am. Bankr. Rep. 759, a more recent decision, construing the statute of Michigan, the court at page 188 quoted the following language, from the opinion of the Circuit Court of Appeals in the same case [27 Am. Bankr. Rep. 821, 196 Fed. 29, 115 C. C. A. 663]: " * * * Since the decision below, the case of In re Huxoll, 27 Am. Bankr. Rep. 579, 193 Fed. 851, has been decided by this court. We there carefully reviewed and considered the Michigan decisions, and reached the conclusion that the Michigan statute does not of itself create a lien upon the mortgaged property prior to the lien of the mortgage; but gives merely a right to a lien, requiring a proceeding of some kind for its fastening. We there held that the right to lien was lost if such proceeding was not taken before bankruptcy."

The decisions are, of course, all based upon the premise that an unfiled or unrenewed chattel mortgage is good as between the mortgagor and the mortgagee.

[2] From these decisions I reach the conclusion that, in the respect that the Wyoming statute provides that an unfiled or an unrenewed chattel mortgage shall be void as to the creditors of the mortgagee, it is meant a creditor who is not only one in the general sense of that term, but one who has perfected his right by some form of judicial process which attaches a lien upon the property so as to bring the creditor into privity with the property. Had the creditor securing a judgment prior to the filing of the petition in bankruptcy in this case perfected his lien by a levy upon the property covered by the unrenewed mortgage, a different conclusion could probably have been reached by this court.

If, as counsel has intimated, the sheriff, in failing to make said levy, was actuated by ulterior motives, this court is not the tribunal for the trial of such an issue. In addition to the foregoing, it must be noted that prior to the commencement of the bankruptcy proceeding the mortgagee took possession of the property covered by the mortgage, which makes a stronger case in respect to the rights of the mortgagee antecedent to the intervention of any creditor, either through the fastening of a lien upon the property or the filing of proceedings in bankruptcy.

For the reasons stated, an order may be entered dissolving the temporary restraining order, denying the petition for a temporary injunction and the appointment of a receiver in the premises, reserving to petitioners their exceptions.